UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

_____

|  |  |  |
|---|---|---|
| ANTWAUN JONES, | : | CASE NO. 1:20-cv-00440 |
|  | : |  |
| Plaintiff, | : | ORDER |
|  | : | [Resolving Doc. 50, 52] |
| vs. | : |  |
|  | : |  |
| UNITED AMERICAN SECURITY, LLC, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

_____

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Antwaun Jones sued Defendant United American Security, LLC, on behalf of himself and others similarly situated, for state and federal wage violations.[1] Plaintiff alleged that Defendant failed to pay him and other Class and Collective Members for overtime and end-of-shift work duties.[2] The parties negotiated and settled.[3]

Now, the parties jointly move for final approval of their Fair Labor Standards Act ("FLSA") collective and Federal Rule of Civil Procedure 23 class action settlement.[4] This Court preliminarily approved the parties' proposed settlement and directed them to send notice to putative Collective and Class Members.[5] The Court held a fairness hearing on May 18, 2021.

After reviewing the parties' settlement proposal and Plaintiff's supplemental fees

_____

[1] Doc. 1.
[2] Doc. 50 at 1–2.
[3] *Id.* at 2.
[4] *Id.*
[5] Doc. 39.

Case No. 1:20-cv-00440
Gwin, J.

briefing, the Court **PARTIALLY APPROVES** the settlement.  The Court slightly reduces Plaintiff counsel's requested fees.

     I.      Background

          a.  The Settlement Agreement

The parties' proposed settlement resolves Plaintiff's FLSA collective action and Ohio wage law class action suit.

The parties' Settlement Agreement provides for a gross settlement fund of $350,000, which "represents compensation to Collective Members and Class Members of approximately 10 minutes per day, assuming a three-year statute of limitations."[6]  This fund will be used for "the FLSA Collective Settlement, the Rule 23 Class Settlement, Representative Plaintiff's Service Award, the Settlement Administrator's Fee, and attorneys' fees, costs, and expenses for Class Counsel related to this Action."[7]  The Settlement Administrator's Fee is capped at $25,000, but if the Fee is less than $25,000, the excess reverts to Defendant.[8]  The Representative Plaintiff's Service Award is $3,500.[9]

Collective Members and Class Members will be paid proportionally according to the amount of time they worked for Defendant.  As the parties explain, this treats the Collective and Class Members "equitably relative to each other."[10]  The parties allot 65% of the "net settlement fund" (the gross settlement fund minus the fees and costs described above) for "wage settlement payments" and 35% for liquidated damages.  Essentially, all Class and

---

      [6] Doc. 38-2 at 2; Doc. 50 at 5 ("As alleged in the Complaint, Collective Members and Class Members allegedly performed 10-15 minutes of unpaid work per day.").

      [7] Doc. 38-2 at 2.

      [8] *Id.* at 3.

      [9] *Id.*

      [10] Doc. 50 at 5.

Case No. 1:20-cv-00440
Gwin, J.

Collective Members will receive a pro rata portion of the 65%, but only those who opted in to the FLSA collective will receive a share of the 35% liquidated damages.[11]

## II.    FLSA Collective and Rule 23 Class Action Settlement Approval

### a.  Class and Collective Approval

The Court previously conditionally certified Plaintiff's proposed FLSA Collective and Rule 23 Class.[12]  Nothing has changed to warrant decertification of either the Collective or the Class at this stage.  The Collective Members remain similarly situated,[13] and the settlement Class meets Rule 23's standards.[14]

### b.  Notice Program

For Rule 23 settlement purposes, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[15]

The Settlement Administrator sent notice to 1,558 potential FLSA Collective and Rule 23 Class Members.  Of those, 132 people returned the FLSA consent form and are eligible

---

[11] Doc. 38 at 8–9.

[12] Doc. 39 at 2–3.

[13] *See Frye v. Baptist Memorial Hospital, Inc.*, 495 Fed. Appx. 669, 671–72 (6th Cir. 2012).

[14] Fed. R. Civ. P. 23(a).  To merit final class certification, Plaintiffs are required to show that (1) the class is too numerous to join individually; (2) there are common questions of law or fact; (3) the representative Plaintiffs' claims or defenses are typical of the whole class; and (4) the representative Plaintiff adequately represents the Class.  *Id.*  Also, under Rule 23(b)(3), common questions of law or fact must predominate over questions affecting only individual class members.  A class action must be superior other adjudication methods. *Id.*

At the conditional certification stage, Plaintiff successfully explained that the Class meets these requirements.  The reasoning holds at this final stage.  *See* Doc. 38-1 at 10–11.  Here, Plaintiff's more-than-1,400-member Class satisfies the numerosity requirement.  All members, including named Plaintiff, shared common claims about unpaid overtime.  The Class satisfied the commonality and typicality requirements.  Further, these overtime questions predominated over individual members' claims.  Lastly, Plaintiff has already adequately represented the Class through counsel and has secured a favorable settlement for Class Members.

[15] Fed. R. Civ. P. 23(c)(2)(B).

Case No. 1:20-cv-00440
Gwin, J.

FLSA Collective Members.[16]

Then, the Administrator sent a Rule 23 Class Notice to 1,426 people who "did not return a [FLSA] Consent Form or were not otherwise eligible to participate in the [FLSA] Collective."[17]  The Administrator received five requests to opt out of the Class and did not receive any objections to the Class.  Of the more than 1,400 Class notices the Administrator sent, 183 were undeliverable.  The Administrator was able to find updated addresses for a further 20 people.[18]

The Court previously approved the parties' Collective and Class notices.[19]  The Court finds that the notices satisfied constitutional[20] and Rule 23 requirements.

### c.  Approval Standards

Before approving a FLSA settlement, a court must ensure that the settlement is fair and reasonable and must determine that there was a bona fide dispute between the parties.[21]  Likewise, in a Rule 23 class action, the Court must determine that the settlement is "fair, reasonable, and adequate."[22]

Rule 23(e)(2) provides factors for courts to consider when making a fairness determination.  Courts consider whether:

> (A) the class representatives and class counsel have adequately

---

[16] Doc. 50 at 2.

[17] *Id.* at 3.

[18] *Id.*

[19] *See* Doc. 39 at 4.

[20] *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008).

[21] *Athan v. U.S. Steel Corp.*, —F. Supp. 3d—, No. 17-CV-14220-TGB-DRG; 2021 WL 805430, at *3 (E.D. Mich. Mar. 3, 2021); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *2 (N.D. Ohio Mar. 26, 2019).

[22] Fed. R. Civ. P. 23(e)(2); *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Case No. 1:20-cv-00440
Gwin, J.

    represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.[23]

Further, for both FLSA and Rule 23 settlements, Sixth Circuit courts also consider:

    (1) the risk of fraud or collusion;
    (2) the complexity, expense and likely duration of the litigation;
    (3) the amount of discovery engaged in by the parties;
    (4) the likelihood of success on the merits;
    (5) the opinions of class counsel and class representatives;
    (6) the reaction of absent class members; and
    (7) the public interest.[24]

For FLSA purposes, the key concern, however, is the legitimacy of the parties' legal dispute, "that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement."[25]

Considering these factors and combining them where they overlap, the parties' settlement merits final approval. The Court will, however, adjust Plaintiff counsel's attorney's fees award.

Named Plaintiff and Plaintiff counsel adequately represented the Class and Collective Member's interests. Each party diligently litigated this matter. Both sides mediated and

---

[23] Fed. R. Civ. P. 23(e)(2).

[24] *Barnes*, 2019 WL 1614822, at *2 (citing *UAW*, 497 F.3d at 631).

[25] *Barnes*, 2019 WL 1614822, at *2.

-5-

Case No. 1:20-cv-00440
Gwin, J.

reached agreement through informed, hard-fought arm's-length negotiations.[26]  The parties

investigated the facts in this case and "exchanged and analyzed" each other's disclosures.[27]

There is no indication of fraud or collusion.

There have been no objections to the settlement.[28]  Further, out of more than 1,400

potential Class Members, only 5 opted out.[29]

The proposed settlement also provides Class and Collective Members appropriate

relief.  With a more-than-100-person FLSA Collective and a Rule 23 Class of over 1,400,

litigation would have been fact-intensive, complicated, and risky.  Trial would not have

guaranteed a favorable outcome for Collective and Class Members.[30]

Further, Plaintiff's claims centered around Class and Collective Members' unpaid,

end-of-shift duties.[31]  The settlement fund amount is based on an estimated additional ten

minutes of work daily.[32]  While these potentially small claims would have been difficult for

Collective and Class Members to pursue individually, they are able to achieve relief through

settlement.  Collective and Class Members' portions will be equitably divided according to

---

[26] *See* Doc. 50 at 4 – 5 ("The settlement was reached after mediation with Magistrate Judge Jonathan D. Greenberg, during which the Parties debated the factual and legal issues in this case, exchanged numerous settlement proposals, and ultimately reached a Settlement Agreement to resolve this matter on terms that, in class counsel's opinion, represents a substantial recovery by the Collective and the Class without the inherent risk of loss should this case continue through litigation, trial, and appeal.")

[27] Doc. 38-1 at 6.

[28] Doc. 50 at 3.

[29] *Id.*

[30] For this reason, the proposed settlement is also consistent with the public interest.  *See Kis v. Covelli Enterprises, Inc.*, Nos. 4:18-cv-54, 4:18-cv-434, 2020 WL 2812405, at *5 (N.D. Ohio May 29, 2020) ("Class actions provide plaintiffs relief when the costs and risks of litigation make bringing each individual claim not worthwhile. Settlements serve the public interest by providing class-wide wage recovery that otherwise may have been uncompensated.").

[31] Doc. 50 at 1–2.

[32] *Id.* at 5.

Case No. 1:20-cv-00440
Gwin, J.

how long they worked for Defendant.[33]

The Representative Plaintiff's Service Award[34] and the Settlement Administrator's Fee are also reasonable.

The parties' agreed-upon settlement distribution plan is logical and based on counsel's experience with this sort of litigation.[35]  The Court raises only one potential issue with the settlement plan's language:  Paragraph 53 provides that unused Global Settlement Funds revert back to Defendant.  Paragraph 54 says "All settlement payment checks that are not negotiated by a Claimant within 180 days of the date issuance [sic] shall be null and void, and the associated funds shall revert back to Defendant."[36]  The Court assumes this means that unclaimed funds will revert to Defendant.

Overall, with one exception, the Court finds that the proposed settlement is fair, reasonable, and adequate.  It resolves a genuine dispute between the parties.  Still, the Court finds that Plaintiff counsel's requested attorney's fees are too high in light of the lodestar calculation.  The Court slightly adjusts the awarded fee amount.

## III.    Plaintiff's Requested Attorney's Fees

FLSA provides that the Court "shall allow" Defendants to pay "a reasonable attorney's fee," as well as "costs of the action."[37]  The award is mandatory,[38] but it must be reasonable

---

[33] Id.

[34] See Rotondo v. JPMorgan Chase Bank, N.A., No. 2:19-cv-2328, 2019 WL 6167086, at *9 (S.D. Ohio Nov. 20, 2019); Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) ("courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation") (citation omitted).

[35] Doc. 38-2 at 14–16.

[36] Id. at 15–16.

[37] 29 U.S.C. § 216(b).

[38] United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 501 (6th Cir. 1984).

Case No. 1:20-cv-00440
Gwin, J.

such that it is "adequately compensatory to attract competent counsel" and also "avoids

producing a windfall for lawyers."[39]

Likewise, Federal Rule of Civil Procedure 23(h) permits the Court to award

"reasonable attorney's fees."[40]

Attorney's fees are calculated using the lodestar and percent-of-the-fund methods.[41]

Courts have the discretion to determine which method is best given "the unique

characteristics of class actions in general . . . [and] the unique circumstances of the actual

cases before them."[42]  "The lodestar method better accounts for the amount of work done,

while the percentage of the fund method more accurately reflects the results achieved."[43]

The percentage-of-the-fund method is favored in class actions,[44] but a lodestar calculation[45]

gives a useful crosscheck.

In this instance, Plaintiff counsel seeks one third of the $350,000 gross settlement

fund, or $116,666.67.[46]  Plaintiff counsel provided a lodestar calculation of $58,257.50 for

181.05 work hours for three attorneys and an unknown number of paralegals.[47]

---

[39] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).  Ohio law also provides for reasonable attorney fees.  Ohio Rev. Code § 4111.10(A).

[40] Fed. R. Civ. P. 23(h).

[41] *Van Horn v. Nationwide Property and Casualty Ins. Co.*, 436 Fed. Appx. 496, 498 (6th Cir. 2011).

[42] *Id.* (citing *Rawlings v. Prudential–Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir.1993)).

[43] *Rawlings,* 9 F.3d at 516.

[44] *Kis*, 2020 WL 2812405, at *6, *see also Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (the percentage-of-the-fund method "most closely approximates how lawyers are paid in the private market and incentivizes lawyers to maximize class recovery, but in an efficient manner").

[45] A lodestar calculation is an attorney's reasonable hourly rate multiplied by the number of hours reasonably spent on a case.  *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004).  The attorney's reasonable hourly rate should be based on the "prevailing market rate," or the "rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

[46] Doc. 52 at 1–2.

[47] *Id.* at 2.

-8-

Case No. 1:20-cv-00440
Gwin, J.

Here, a slight reduction to 30% of the settlement fund or $105,000 is a better reflection of the circumstances in this case.

To determine if a percentage-of-the-fund award is reasonable in a FLSA case, a court considers: (1) the value of the benefit to the Collective, (2) society's interest in rewarding attorneys "who produce such benefits in order to maintain an incentive to others," (3) whether counsel took on the litigation on a contingent fee basis, (4) counsel's services value on an hourly basis, (5) the complexity of the litigation, and (6) both parties' counsel's professional skill.[48]

The Court appreciates Plaintiff counsel's skill and experience.[49]  The parties were able to settle this matter efficiently with a benefit for a large Class and Collective without the uncertainty of trial.  Plaintiff counsel took this case on a contingency basis, bearing the risk of the litigation overall.[50]

Plaintiff counsel also points out that one-third-of-the-fund awards are common in FLSA cases in Ohio and that other courts have approved a multiplier two times the lodestar calculation.[51]  However, the cases Plaintiff counsel cites were more complex overall and involved more class members and attorney hours.[52]  That does not mean that this litigation was simple or without complexity, but it supports a small reduction in Plaintiff counsel's

---

[48] *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

[49] Doc. 52 at 4 ("Further, Plaintiff's counsel is highly experienced in wage and hour cases, having litigated more than 200 wage and hour cases since 2014.").

[50] *Id.*

[51] *Id.* at 3 (citing *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 WL 7508650, at *1 (N.D. Ohio July 27, 2018); *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *1 (N.D. Ohio May 4, 2018)).

[52] For example, Plaintiff's attorneys spent a combined 122.25 hours on this matter.  In *Osman*, counsel spent 435.64 hours on litigation and settlement. *See Osman*,  2018 WL 2095172, at *3.

Case No. 1:20-cv-00440
Gwin, J.

overall award.

The Court approves a 30% of the settlement fund award for attorney's fees. The balance of the approximately 3% not designated for attorney's fees should be returned to the settlement fund to be factored into Class and Collective Members' awards.

## IV.    Conclusion

For the foregoing reasons, the Court **APPROVES IN PART** the parties' proposed settlement. The Court awards Plaintiff's attorneys 30% of the settlement fund, rather than the requested one-third. The difference of this downward departure should be included in the remaining settlement fund disbursed to Class and Collective Members. The Court retains jurisdiction to enforce the parties' settlement terms.

IT IS SO ORDERED.

Dated: July 20, 2021                           *s/       James S. Gwin*
                                                                JAMES S. GWIN
                                                                UNITED STATES DISTRICT JUDGE